Jane S. LYONS, Plaintiff,

v.

UNDERWRITERS AT LLOYD'S, LONDON, ENGLAND, Defendant.

Jane S. LYONS, Plaintiff,

v.

GLENS FALLS INDEMNITY CO., a New York corporation, Defendant.

Civ. Nos. 7256, 7281.

United States District Court
D. Oregon.

Oct. 12, 1956.

Maguire, Shields, Morrison & Bailey, Portland, Or., for plaintiff.

Meindle, Mize & Kriesien, Portland, Or., for defendants.

EDWARD P. MURPHY, District Judge.

These are two actions by the beneficiary of two accident policies issued to James A. Lyons. The insured died on February 10, 1953, near Los Llanos, Lower California, Republic of Mexico, while on a hunting trip with a small party, including two well qualified cardiologists, Drs. Rush and Chamberlain. The issue for resolution is whether or not the insured died by reason of bodily injury caused by accidental, violent, external and visible means, and whether that injury solely and independently of any other cause within three calendar months from the date of the

accident occasioned the death. As a corollary to this issue, or as a further condition, plaintiff had the burden of proving that the assured's death was not directly or indirectly caused or contributed to, within the meaning of the contract, by disease or natural causes.

The trial consumed a considerable number of days. Six eminent heart specialists, and several other highly qualified medical specialists testified at great length. The court having been placed in the uninviting position of testing the sharply conflicting conclusions of the medical experts with respect to the manner of occurrence of the death, it has reviewed the testimony and the record, and has been convinced by a preponderance of the evidence that the assured at the time of his death was a vigorous, robust man of normal health for his age; that the condition of his heart and arteries, while less than perfect when measured by a standard of perfection, was "normal" and "healthy" and not diseased within the meaning of those words for purposes of the policies in question; that on February 10, 1953, an accidental discharge of assured's shotgun resulted in injury to the assured to the extent of powder burns and at least one gunshot pellet being propelled into his face; that as a consequence of these bodily injuries a shock reaction commenced in the assured which terminated with heart-failure; that although a heart which was perfect when measured on an absolute standard would have withstood the pain and shock of the injuries received by the assured, many hearts which are considered in view of the age and general condition of their possessors normal and robust, and not diseased within the meaning of the policies in question, might have succumbed to injuries and shock such as those received by the assured; that the assured in fact succumbed by reason of the injuries and resultant shock he accidentally sustained; and that the plaintiff has sustained his burden of proof on all matters before the court.

The wealth of evidence in this case is too great to permit of extended discussion. It may be noted briefly, however, that the autopsy report upon which defendants place reliance does not note the vital fact of the degree of diminishment of the aortic lumen; that a diminishment in small part of the lumen, although noticeable, and properly noted by an autopsy surgeon, is nevertheless consistent with a properly functioning aorta; that in the absence of a detailed finding of the degree of diminishment of the lumen, the effect of such diminishment is left to speculation and surmise; that many men of the age group of the assured have some degree of diminishment of the aortic lumen without being diseased within the meaning of the policies; that the presence of atheromatous plaques on the aortic valves likewise is an insufficient notation upon which to found a conclusion of incompetence of the valves without some greater description of the degree of stiffness, warpedness, shrinkage, or other malfunction of the valves; that the autopsy report leaves the degree, if any, of malfunctioning of the valves a matter of speculation, for lack of a sufficient description of the degree, character, and effect of the atheromatous plaques discovered on the assured's aortic valves. Likewise, it may be noted briefly that defendant's expert witnesses did not have the same opportunity to observe the assured at close range and for a period of more than a day while he was engaged in strenuous activity and exertion, as did plaintiff's expert witnesses. The conclusions of defendant's expert witnesses that heart-failure came on suddenly on February 10th are inconsistent with the conclusions of plaintiff's expert witnesses who had observed the deceased during periods of peak exertion and strain, greater than any undergone by the deceased immediately before his death, and who had not detected any signs in the deceased's appearance which would have alerted their trained senses. Defendant's experts' other hypothesis of death, that the heart-failure was brought on by a sudden sharp pain caused by a passing of a gallstone through the cystic duct, is made too re-

mote and speculative a possibility and too unlikely a sequence of facts by the overwhelming weight of the other expert testimony in this case.

These brief observations are made not to represent the complete or exclusive basis upon which the court has made its findings, but only to answer some of the main contentions made by the defendant, out of deference to the extreme skill with which they, as well as counsel for plaintiff, have presented their case. All counsel associated with these cases are to be commended upon the manner in which they prepared and presented them. Let the prevailing party prepare findings of fact and conclusions of law in accordance with the Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A., if it is so desired.